[Civ. No. 42976. First Dist., Div. One. May 3, 1979.]

ALFRED L. NORMAN et al., Plaintiffs and Appellants, v.
DEPARTMENT OF REAL ESTATE et al.,
Defendants and Respondents.

**COUNSEL**

Chase & Schneider and Gerald M. Schneider for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendants and Respondents.

## Opinion

**ELKINGTON, J.**—Following appropriate administrative proceedings, the Department of Real Estate of the State of California and Robert W. Karpe, Real Estate Commissioner of California (hereafter collectively and for convenience, Commissioner), imposed disciplinary sanctions upon Homeowners Loan Corporation (hereafter Homeowners) and certain individuals affiliated in one way or another with that corporation. The real estate broker's license of Homeowners and the real estate salesman's license of its "chairman of the board," Alfred L. Norman, were revoked. The real estate salesman's license of its employee, Robert Norman, and the real estate broker's license of its "designated real estate broker," John A. Colistra, were suspended.

The proceedings arose out of alleged violations of Business and Professions Code section 10176, subdivisions (a) and (i), and section 10231.

Homeowners sought no review of the Commissioner's order revoking its real estate broker's license, and that order is now final. As to appellants Alfred L. Norman, Robert Norman and John A. Colistra, those parties were denied Code of Civil Procedure section 1094.5 mandate relief by a judgment of the superior court. The instant appeal was taken by them from that judgment.

Properly applying the independent judgment standard upon review of the entire administrative record, the superior court had concluded that the Commissioner's findings, conclusions, and orders were supported by the weight of the evidence. It becomes our function to determine whether the superior court's judgment was supported by substantial evidence.

■ When a court's finding or a jury's verdict is attacked on the ground that it is not sustained by the evidence, the power of an appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding or verdict. Questions of credibility must be resolved in favor of the fact-finder's determination, and when two or more inferences can reasonably be drawn from the evidence, a reviewing court may not substitute its deductions for those of the trier of fact. If on any material point the evidence is in conflict, it must be assumed that the court or jury resolved the conflict in favor of the prevailing party. (See *Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Green*

*Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].) We consider the record before us in the light of this well-known rule.

Homeowners was engaged in the business of brokering loans secured by trust deeds on real property, in the manner described by Business and Professions Code sections 10131, subdivisions (d) and (e), and 10131.1. Typically, with its own funds it would lend money on the security of such trust deeds, and then sell interests in the loans and their security to individual public "investors" (a term which we shall hereafter use). When such interests were sold, Homeowners would collect the loans' agreed payments and distribute them proportionately to investors according to their interests. Generally the investors purchased their interests in the loans through outside brokers who were not otherwise affiliated with Homeowners. Those brokers were paid commissions by Homeowners for their services.

Business and Professions Code section 10176, as relevant to the appeal, follows: "The [Commissioner] may, upon his own motion, and shall, upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this state, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following: (a) Making any substantial misrepresentation. . . . (i) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing."

The claimed violations of section 10176 related to the "Bodinson" and "Kuburovich" loans made by Homeowners. The borrowers, as additional security for their loans, had prepaid interest, respectively, in the amounts of $22,500 and $33,000. Prospective investors, among other things, were so advised, and some invested in the loans. For some reason Homeowners released from a title insurance company "escrow" and back to Bodinson all, and to Kuburovich half, of their loans' prepaid interest. The releases were without the knowledge or consent of the affected investors, and of course had the effect of substantially reducing the loans' security. (It is noted that Bodinson soon thereafter became bankrupt.)

The above noted transactions of Homeowners were found by the Commissioner and the superior court to involve "substantial misrepresen-

tation," and to constitute "fraud or dishonest dealing" according to section 10176. Those conclusions were, beyond any doubt, properly reached on the case's uncontroverted, and therefore substantial, evidence.

Business and Professions Code section 10231, as relevant, provides: "No person in doing any of the acts set forth in subdivision (d) of Section 10131, subdivision (e) of Section 10131, and Section 10131.1 shall accept any purchase or loan funds or other consideration from a prospective purchaser or lender, . . . except as to a specific loan or a specific real property sales contract or promissory note secured directly or collaterally by a lien on real property . . . ."

■ *As to this statute and those therein mentioned, it will be seen that* a licensed real estate broker, or real estate salesman, in the course of their occupations, may not accept payment from a prospective purchaser for all or part of an *unsecured* promissory note or loan.

In respect of the charged violation by Homeowners of section 10231, the evidence, again undisputed, discloses the following.

■ ■ Homeowners had engaged in the practice of offering for sale to investors its *unsecured promissory notes,* payable on demand, the proceeds of which were used by it "on an interim basis, until such time [if ever] as the investor purchases a specifically secured [real estate] investment." Some investors had purchased such unsecured promissory notes from Homeowners.

In respect of those transactions Homeowners had patently violated section 10231. Here also, there was substantial evidence supportive of the sanctions against Homeowners.

No party to this appeal appears to make any real contention that the sanction imposed upon Homeowners by the Commissioner was not supported in law, and by substantial evidence. But a corporation such as Homeowners may act only through its officers, agents, and employees. The question here presented is whether appellants Alfred L. Norman, Robert Norman and John A. Colistra, or any of them, participated as a matter of law, or of fact, in the charged Business and Professions Code violations. We continue in our narration of the relevant evidence in accordance with the substantial evidence rule, and as it tends to support the superior court's judgment.

Appellant Alfred L. Norman was licensed by the Commissioner as a *real estate salesman.* He was an employee of Homeowners in a top management position and, as noted, the "chairman of its board." He was the loan negotiator for the corporation and in charge of its escrow and other transactions with title insurance companies.

Appellant Robert Norman was the son of appellant Alfred L. Norman, and was a licensed *real estate salesman.* He was an employee and "trainee" of Homeowners and was active in its management. His principal duty, under his father's supervision, was dealing with title insurance companies.

Appellant John A. Colistra was an attorney at law and a licensed *real estate broker.* He was not a paid employee of Homeowners, nor was he actively involved in its management or in its loan negotiations. In return for occasional legal advice and some other services, he had been furnished free office space at the corporation's headquarters where he conducted a private law practice. Among the services so rendered Homeowners was the signing of checks because "the bank required two signatures," and his consent to act as Homeowners' "designated real estate broker" during the period May 11, 1973, to March 21, 1974.

We first consider Homeowners' Business and Professions Code section 10176 violations relating to improper release of prepaid interest on the Bodinson and Kuburovich loans. Alfred L. Norman and Robert Norman (and not John A. Colistra) were found to have participated in those transactions. Each of them, in respect of the Bodinson loan, placed the blame for release of the money from a title insurance company escrow upon an office worker of Homeowners, one Betsy. However, Betsy testified that she instructed the title insurance company to release the money on instructions from Alfred L. Norman personally, or from Robert Norman on behalf of his father. Alfred L. Norman and Robert Norman conceded that they had ordered release of half of the Kuburovich prepaid interest. Here they contended unawareness that the "offering circular" to investors did not reflect the prepaid interest's release. It was the responsibility, they said, of some unnamed member of the "loan committee" to insure the offering circular's accuracy.

And, as noted, Alfred L. Norman held a top management position with Homeowners. He was its loan negotiator, a responsibility which would reasonably cover such things as return of prepaid interest to a borrower. He was in direct charge of title insurance company transactions, which

would include directing return of such prepaid interest held, as here, by such companies in escrow. One of the principal duties of Robert Norman's management position with Homeowners was, as previously pointed out, handling its title insurance company matters and escrows, under his father's supervision. And it is of special significance that the record shows no complaint or attempted corrective action by Alfred L. Norman or Robert Norman in respect of Betsy, or the title insurance company, or the borrowers, or anyone, after the prepaid interest's improper release.

■ The superior court's judgment in respect of Alfred L. Norman, and Robert Norman in respect of the Business and Professions Code section 10176 violation, was patently supported by substantial evidence.

We advert now to the Business and Professions Code section 10231 violation, of which appellants Alfred L. Norman and John A. Colistra (and not Robert Norman) were found responsible.

Alfred L. Norman concedes that he had instructed Homeowners' salespersons to offer the corporation's *unsecured promissory notes* to investors "on an interim basis, until such time as the investor purchases a specifically secured investment." He was aware that the corporation was selling and issuing such unsecured notes. And he was in a position to prevent or countermand such conduct. ■ His active participation in Homeowners' section 10231 violation was abundantly supported by substantial evidence.

John A. Colistra's responsibility for that violation is not so readily apparent. It was based solely upon the theory that he was Homeowners' "designated real estate broker" during the period in which it was committed. Otherwise, the Commissioner makes no contention that Colistra had anything to do with the subject matter of that violation.

■ Where a corporation is licensed by the Commissioner as a real estate broker (as was Homeowners), it is required that it appoint a similarly licensed individual as its "designated real estate broker." (See Bus. & Prof. Code, § 10211; Cal. Admin. Code, tit. 10, § 2740.) Colistra was, as indicated, so designated, and he appears to have been the only licensed real estate broker affiliated with Homeowners. (Alfred L. Norman and Robert Norman, it will be recalled, were licensed as "real estate salesmen.") Such a designated real estate broker must reasonably be charged with responsibility for the corporate compliance with the Real

Estate Law (see Bus. & Prof. Code, § 10000), for otherwise with no such fixed responsibility, the statutory purpose would be frustrated. As said in *Grand* v. *Griesinger,* 160 Cal.App.2d 397, 406 [325 P.2d 475]: "The entire statutory scheme requires the broker actively to conduct his brokerage business and to supervise the activities of his salesmen." In this, although moral turpitude, dishonesty or corruption was patently absent, Colistra was clearly remiss. The law, and substantial evidence, thus supported his accountability for Homeowners' Business and Professions Code section 10231 violation.

Appellants contend also that the discipline imposed upon them was so severe as to amount to an abuse of discretion of the Commissioner, and of the superior court.

As noted, only the real estate salesman's license of Alfred L. Norman was revoked. Since he obviously was the person principally responsible for Homeowners' established derelictions, no abuse of discretion is apparent. The discipline imposed upon Robert Norman and John A. Colistra was minimal; their respective licenses were suspended for three months only, and *each of the suspensions was stayed.* ▮ Again no abuse of discretion is observed.

▮ "In determining whether there has been an abuse of discretion the Supreme Court of this state has stated that 'If reasonable minds might differ as to the propriety of the penalty imposed, this fact serves to fortify the conclusion that the . . . [administrative body] acted within the area of its discretion.' [Citations.] It is equally well settled that in reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh. [Citations.] Such interference, in the light of the foregoing authorities, will only be sanctioned when there is an arbitrary, capricious or patently abusive exercise of discretion." (*Brown* v. *Gordon,* 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901]; and see *Barber* v. *State Personnel Bd.,* 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306]; *Nightingale* v. *State Personnel Board,* 7 Cal.3d 507, 515 [102 Cal.Rptr. 758, 498 P.2d 1006]; *Macfarlane* v. *Dept. Alcoholic Bev. Control,* 51 Cal.2d 84, 91 [330 P.2d 769].)

■ No merit is seen in appellants' insistent contentions that since their acts were in good "faith," and not "willful," and in accordance with "legal advice," they were improperly subjected to discipline. "Disciplinary·procedures provided for in the Business and Professions Code . . . are to protect the public not only from conniving real estate salesmen but also from the *uninformed, negligent, or unknowledgeable salesman.*" (*Handeland* v. *Department of Real Estate,* 58 Cal.App.3d 513, 518 [129 Cal.Rptr. 810]; italics added.) Their purpose "is not to punish but to afford protection to the public . . . ." (*Borror* v. *Department of Investment,* 15 Cal.App.3d 531, 540 [92 Cal.Rptr. 525].)

Nor is merit found in any of the several incidental points raised throughout the briefs of appellants. Their respective violations were manifestly established by legally admissible, and essentially uncontroverted, evidence.

For the foregoing reasons the judgment of the superior court will be affirmed.

Affirmed.

Racanelli, P. J., and Newsom, J., concurred.