[Civ. No. 44478. First Dist., Div. Three. Feb. 26, 1980.]

ROBERT WILLIAM MILNER, Plaintiff and Respondent, v. DAVID H. FOX, as Real Estate Commissioner, etc., et al., Defendants and Appellants.

**COUNSEL**

George Deukmejian, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendants and Appellants.

Alfred L. Young for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—This is an appeal from a judgment of the San Mateo County Superior Court granting respondent Milner's (hereafter respondent) petition for a writ of mandate ordering appellant Commissioner of Real Estate (hereafter Commissioner) to set aside his decision suspending respondent's real estate broker's license for six months. The Commissioner instituted appropriate administrative proceedings accusing respondent and others[1] of alleged violations of Business and Professions Code sections 10176, subdivisions (a) and (i), 10231 and 10177, subdivision (d).[2]

---

[1]Respondent's case is companion to *Norman* v. *Department of Real Estate* (1979) 93 Cal.App.3d 768 [155 Cal.Rptr. 715], decided by Division One of this court, opinion by Elkington, J. That court affirmed the judgment of the superior court denying a petition for writ of mandate seeking relief from disciplinary sanctions imposed by the Commissioner upon officers Alfred L. Norman, Robert Norman, and John A. Colistra of Homeowners Loan Corporation.

[2]Business and Professions Code section 10176, as relevant to the appeal, follows: "The [Commissioner] may, upon his own motion, and shall, upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this state, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following: (a) Making any substantial misrepresentation....(i) Any other conduct, whether of the same

Homeowners Loan Corporation (hereafter Homeowners) was a real estate licensee engaged in the business of brokering and servicing loans secured by real property. Respondent was the designated officer of Homeowners' corporate real estate license pursuant to Business and Professions Code[3] section 10211 and was Homeowners' president in charge of its sales force during at least part of the relevant period.[4]

The Commissioner adopted the proposed decision of the hearing officer finding that respondent violated section 10231 in that Homeowners had on two occasions accepted loan funds from a George Boyd in return for unsecured demand notes. (Apparently Boyd had no direct dealings with respondent either in person or over the phone. Boyd's account was handled exclusively by Ronald Samman, an independent broker who was neither employed nor supervised by Homeowners. Boyd lost no money as a result of the alleged violation.)

or a different character than specified in this section, which constitutes fraud or dishonest dealing."

Business and Professions Code section 10231, as relevant, provides: "No person in doing any of the acts set forth in subdivision (d) of Section 10131, subdivision (e) of Section 10131, and Section 10131.1 shall accept any purchase or loan funds or other consideration from a prospective purchaser or lender,... except as to a specific loan or a specific real property sales contract or promissory note secured directly or collaterally by a lien on real property...."

Business and Professions Code section 10177, subdivision (d) as relevant provides: "The commissioner may suspend or revoke the license of any real estate licensee, or may deny the issuance of a license to an applicant, who has done any of the following:... (d) Willfully disregarded or violated any of the provisions of the Real Estate Law (commencing with Section 10000 of this code) or of Chapter 1 (commencing with Section 11000) of Part 2 of this division or of the rules and regulations of the commissioner for the administration and enforcement of the Real Estate Law and Chapter 1 of Part 2 of this division."

[3] Unless otherwise noted all references are to the Business and Professions Code.

[4] "Homeowners sought no review of the Commissioner's order revoking its real estate broker's license, and that order is now final." (See *Norman, supra,* at p. 772.)

In *Norman, supra,* at page 773, the court described in more detail what respondent's brief refers to as Homeowners "large" loan or "syndicate" business: "Homeowners was engaged in the business of brokering loans secured by trust deeds on real property, in the manner described by Business and Professions Code sections 10131, subdivision (d) and (e), and 10131.1. Typically, with its own funds it would lend money on the security of such trust deeds, and then sell interests in the loans and their security to individual public 'investors' (a term which we shall hereafter use). When such interests were sold, Homeowners would collect the loans' agreed payments and distribute them proportionately to investors according to their interests. Generally the investors purchased their interests in the loans through outside brokers who were not otherwise affiliated with Homeowners. Those brokers were paid commissions by Homeowners for their services."

Exercising its independent judgment upon the weight of the evidence, the trial court mandated that the Commissioner's decision be set aside as "contrary to law and [is] not supported by the Findings of Fact"; and therefore determined that the "penalty imposed" was an "abuse of discretion."[5]

It is our view that the "Boyd" transactions were section 10231 violations. Accordingly we reverse the trial court's judgment and remand for further review of the propriety of the "penalty imposed."

Appellant Commissioner assigns six issues on appeal. They are:

1. Did the Boyd notes violate section 10231?

2. Was respondent responsible for the issuance of the Boyd notes?

3. Did respondent act "willfully" within the meaning of section 10177, subdivision (d)?

4. Was the decision supported by the administrative findings?

5. Did the trial court in determining the sufficiency of the administrative findings apply an incorrect standard of review?

6. Was the discipline imposed upon respondent an abuse of discretion?

In this case wherein the trial court is authorized to conduct a limited trial de novo, our appellate function is analogous to that in an ordinary civil appeal: "only errors of law are subject to its cognizance, and a factual finding can be overturned only if the evidence received by the trial court, including the record of the administrative proceeding, is insufficient as a matter of law to sustain the finding." (See *Merrill* v. *Department of Motor Vehicles, supra*, 71 Cal.2d 907, 915.) For example, in this case, while the evidence is conflicting and arguable to say the very least, yet the evidence is substantial and supports the trial

---

[5]Respondent's existing real estate broker's license is a "vested" right. Therefore, the administrative decision is reviewed by means of a limited trial de novo in which the trial court not only examines the record for errors of law but also exercises its independent judgment upon the *weight* of the evidence produced before the administrative agency, together with any further evidence properly admitted by the court. (See Code Civ. Proc., § 1094.5, subd. (d); *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 914 [80 Cal.Rptr. 89, 458 P.2d 33].)

court's factual findings. Accordingly, we are not permitted to and will not disturb them in this appeal. While we footnote them in their entirety, it would appear that findings 1 through 6 only are relevant to our discussion and decision.[6]

Obviously the determination as to whether the Boyd transactions, found by the trial court to be "payoffs" and not "new investments" (finding 3), constitute section 10231 violations presents a question of law for our review.

■ Respondent argues in this appeal, as apparently he successfully contended in the trial court, that section 10231 is *not applicable* to the Boyd transactions "as that section pertains only to *new* funds invested." We understand respondent's argument to be that the disposition of payoff funds is regulated by section 10231.1[7] to the exclusion of section

---

[6]The trial court's findings of fact and conclusions of law follows: "1. That Petitioner was terminated from his employment from Homeowners Loan Corporation on April 19, 1973.

"2. That immediately following Petitioner's termination of employment from Homeowners Loan Corporation he notified the Commissioner of Real Estate of such termination.

"3. That Boyd's funds which are the subject of this action, namely, the amounts of $1,000 and $3,000 respectively, were the results of *payoffs* of other notes and deeds of trust which Mr. Boyd left with Homeowners Loan for servicing and said funds were not the result of new investments wherein the funds would have come directly from Mr. Boyd to Homeowners Loan Corporation.

"4. That the loan payoffs above mentioned in the amounts of $1,000 and $3,000 were held by Homeowners Loan Corporation for less than sixty (60) days.

"5. That Petitioner was advised by two California lawyers, John Colistra and Richard McGowan, that the acts complained of by the Real Estate Commissioner were legal and proper.

"6. That Petitioner had no direct knowledge of the actual Boyd transactions and that said transactions were handled in their entirety by others.

"7. That the six months' suspension is arbitrary, capricious and an abuse of discretion as it has no relation to the offense charged.

"8. That the broker who handled the Boyd transaction was Ron Sammon and he was not charged or in any way disciplined by the Department of Real estate.

"9. That the standard of proof required in order for the Hearing Officer to make a finding is 'convincing proof to a reasonable certainty.'

"From such findings of fact the Court makes the following

"CONCLUSIONS OF LAW

"1. That the decision of the Real Estate Commissioner is contrary to law and is not supported by the Findings of Fact.

"2. That the penalty imposed by the Commissioner was arbitrary, capricious and an abuse of discretion."

[7]Section 10231.1 provides: "No person in doing any of the acts set forth in subdivision (d) of Section 10131, subdivision (e) of Section 10131 and Section 10131.1 shall, as agent or principal retain funds payable according to the terms of a promissory note

10231. Simply stated, respondent's argument is that while the Real Estate Broker's Act requires that a broker or salesman initially invest his client's funds in investments secured by a lien on real property (§§ 10131, subds. (d) and (e), 10131.1),[8] the same act does not prohibit the broker or salesman from reinvesting the returned funds in unsecured investments, herein the unsecured promissory notes of Homeowner's corporate affiliate.

That respondent's argument proved persuasive in the trial court is understandable in light of the fact that Elkington, J., had not rendered the court's opinion in *Norman* v. *Department of Real Estate, supra*, 93 Cal.App.3d 768.[9] In *Norman*, the court sustained the commissioner's

or real property sales contract secured directly or collaterally by a lien on real property, for a period longer than 60 days, except pursuant to a written agreement with the purchaser or lender; provided that no agreement shall provide for the payment of interest on funds so retained."

[8]Section 10131 provides in relevant part: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others:... [¶] (d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity. [¶] (e) Sells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract, or a promissory note secured directly or collaterally by a lien on real property or on a business opportunity, and performs services for the holders thereof."

Section 10131.1 provides: "A real estate broker within the meaning of this part is also a person who engages as a principal in the business of buying from, selling to, or exchanging with the public, real property sales contracts or promissory notes secured directly or collaterally by liens on real property, or who makes agreements with the public for the collection of payments or for the performance of services in connection with real property sales contracts or promissory notes secured directly or collaterally by liens on real property.

"As used in this section, 'in the business' means:

"(a) The acquisition for resale to the public, and not as an investment, of eight (8) or more real property sales contracts or promissory notes secured directly or collaterally by liens on real property during a calendar year, or

"(b) The sale to or exchange with the public of eight (8) or more real property sales contracts or promissory notes secured directly or collaterally by liens on real property during a calendar year; provided, that no transaction negotiated through a real estate licensee shall be considered in determining whether a person is a real estate broker within the meaning of this section."

[9]In our deliberations we have considered the distinct possibility that the trial court may have reasoned that while Homeowners' issuance of unsecured interest bearing promissory notes to Boyd was a "patent" section 10231 violation, respondent did not "willfully" violate section 10231 when acting in good faith reliance on the advice and direction of Homeowners' attorneys. The trial court's findings (see fn. 6, p. 572) do not foreclose such a possibility. In any event, we seek to make our view clear. We hold that

sanction imposed upon the license of one John A. Colistra (respondent's successor to the office of Homeowners' president and "designated real estate broker"). With respect to the "Boyd" transactions the court stated that "Homeowners had patently violated section 10231." (At p. 774.) Accordingly, the court held Colistra reasonably charged with responsibility for a third Boyd-Samman unsecured $2,000 promissory note caused to be issued by Homeowners on June 24, 1973. (Additionally the referee found a section 10231 violation on July 2, 1973, in the amount of $4,000 evidenced by an unsecured note issued to one Eloise Henfling.)

■ Respondent first acknowledges that section 10231.1 "allows servicing companies receiving monthly payments or *payoffs* 60 days to take care of their bookkeeping and to remit said funds to the lender." Respondent then spuriously reasons that because section 10231 allows that the statutory "bookkeeping" time may be extended by an interest free agreement, the section does not prohibit a servicing company (Homeowners) during the statutory 60 days (herein about 30 days) from unilaterally agreeing to pay interest for the short term use of the retained "payoff" funds. (See fn. 9, p. 573.)

We remain unpersuaded. Manifestly, Commissioner's position is the only sound rationale. Sections 10231 and 10231.1 when logically read

respondent acted "willfully" within the meaning of section 10177, subdivision (d) (see fn. 2, p. 569) when he signed and issued the memorandum dated February 12, 1973, directed to investment salesmen. It reads as follows: "Under the permit issued by the Department of Corporations, the company must fund the large loans with its own funds after approval and before the loan can be sold to our investors. HLC has arranged a line of credit with its banking institution for this purpose. This form of lending results in costs to us and interest paid to the bank.

"In order to eliminate the possibility of investment salesmen losing investors' funds because of lack of merchandise or because the particular loans being offered does [*sic*] not meet with the investors' approval, the company is presently making available, to the investor, its negotiable corporate demand note, as security for those funds that the investor places with the company, on an interim basis, until such time as the investor purchases a specifically secured investment.

"This arrangement is being accomplished in order to accommodate the various investors you might have who desire to still have their money working for them, at 10% per annum, during the interim period when they have not invested in a specific loan package and having our investors benefit rather than the commercial bank."

"Willfully" as used in section 10177, subdivision (d) does not require an intent to violate the law, only an intent to engage in the act or conduct prohibited by the statute is required. (See *Goodhew* v. *Industrial Acc. Com.* (1958) 157 Cal.App.2d 252, 256-257 [320 P.2d 513].) Respondent acted voluntarily with an awareness of the nature of his conduct and therefore "willfully." Advice of counsel or other evidence of good faith does not render his act any less "willful." (See *People* v. *Clem* (1974) 39 Cal.App.3d 539, 542 [114 Cal.Rptr. 359].)

together are compatible. ▮ Section 10231 prohibits a mortgage broker from placing for investment any loan funds, whatever their source, unless secured by a lien on real property. To read and interpret section 10231 as making a distinction between "new" and "payoff" loan funds would, in our opinion, lull the secured investor into a sense of false security not to mention defeating the purpose of the act. It is inconceivable that the Legislature would require that the lending public investments be secured by realty and at the same time afford no protection or security for the returned investment. Clearly such is not the case. ▮ The purpose of section 10231.1 is to provide that investors receive the return on their investment reasonably promptly. We agree with appellant Commissioner that nothing in this section permits a mortgage broker to issue unsecured notes in exchange for loan payoffs. We reverse the judgment.

*Norman* v. *Department of Real Estate, supra*, 93 Cal.App.3d 768, is sound authority for resolution of the remaining legal question presented in this appeal. ▮ Accordingly, we hold that respondent herein is legally responsible for Homeowners' section 10231 digressions, certainly during the period that he was president and "designated real estate broker." Apparently, on this record he ceased to function as president on April 19, 1973, (finding No. 1) and immediately notified the Commissioner of his disassociation. (Finding No. 2.) However, the trial court made no finding as to the effective date respondent ceased to operate as the designated real estate broker or officer. The referee found the date to be May 11, 1973, the date Colistra assumed the role of designated officer or broker. Arguably then respondent is responsible for both the April 8 and May 6 Boyd transactions. A corporate real estate broker in contemplation of the law conducts its brokerage business if at all under the active aegis of its designated broker. (See *Norman, supra*, at pp. 776-777.) However, *Norman*, at pages 776-777, teaches that the designated real estate broker *must* reasonably be charged with responsibility for corporate compliance with the Real Estate Law. In the light of findings Nos. 1 and 2 of the trial court, we find it would be *unreasonable* to charge respondent with Homeowners' May 6, 1973, "Boyd" transaction. Further, in this instance we find that such a result does not frustrate the "statutory scheme." (See *Norman, supra*, at p. 777.)

Particularly is this true in the light of the fact that Homeowners' section 10231 violation of April 8, 1973 (Boyd—$1,000 unsecured note) standing alone is clearly sufficient to warrant the imposition of sanc-

tions on respondent Milner's *individual* real estate broker's license. Neither the fact that the "payoff" funds were held short term for unsecured reinvestment nor the fact respondent acted on the advice of attorneys, nor the fact that respondent had no knowledge of or direct dealing with Boyd when considered separately or collectively can serve to absolve his licensee from responsibility for Homeowners' violation. Clearly any other view herein would frustrate the statutory scheme.

The views that we have expressed and the result we have reached render it unnecessary to discuss appellant's contentions regarding the sufficiency of referee's findings to support the Commissioner's decision and whether the trial court in setting aside the Commissioner's findings imposed upon the Commissioner an incorrect standard of proof, i.e., "convincing proof to a reasonable certainty."

The judgment is reversed. Upon remand the trial court will review the propriety of the Commissioner's sanction upon respondent's real estate broker's license. We, of course, express no opinion as to this issue. Indeed it would be presumptious on our part to even hold an opinion. The learned trial court herein fully understands that our respective roles are well delineated. (See *Norman* v. *Department of Real Estate, supra*, 93 Cal.App.3d 768, 777.)

Scott, J., and Feinberg, J., concurred.

A petition for a rehearing was denied March 27, 1980, and respondent's petition for a hearing by the Supreme Court was denied April 30, 1980.