**In re Hubert Beckwith GRABAU, Debtor.**

**In re Vincent E. BROWN, Debtor.**

**No. C 92–3767 FMS.**

United States District Court, N.D. California.

Jan. 29, 1993.

James D. Sumner, San Jose, CA, for plaintiffs Vinaya Y. Ranadive, Bevel A. Hodges, Delfina D. Hodges, John P. Bertlow, K. Henry Date, Robert A. Greenley, Charles P. Wolf, Inc. Plan and Trust, Joseph D. Murphy, David H. Herritt, William E. Hersey, Pamela K. Hersey, Frank C.

Sollazi, Susan L. Sollazi, Cupertino Supply Inc. and Profit Sharing Plan.

John N. Pope, Jr., San Jose, CA, for Hubert Beckwith Grabau.

Henry B. Niles, III, Yonts & Skemp, Santa Cruz, CA, for Vincent E. Brown.

## ORDER REVERSING IN PART, AFFIRMING IN PART, AND REMANDING IN PART

FERN M. SMITH, District Judge.

Appellants Ranadive et al., Plaintiffs in the Bankruptcy proceedings, initiated two complaints to determine the non-dischargeability of their claims against Bankruptcy Defendants H. Beck Grabau ("Grabau") and Vincent Brown ("Brown"). The cases were consolidated and tried in the Bankruptcy Court before the Honorable Marilyn Morgan. Following a four day court trial, the Bankruptcy Court entered a judgment of non-dischargeability in the amount of $269,750 against Brown, under 11 U.S.C. § 523(a)(4), but found in favor of Grabau under 11 U.S.C. §§ 523(a)(4) & 523(a)(2)(A). 151 BR 235.

In this consolidated appeal, Plaintiffs in the Bankruptcy Court appeal the judgment in favor of Grabau and Defendant Brown appeals the judgment of non-dischargeability. The Bankruptcy Court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Bank.Proc. 8013. Conclusions of law, including the statutory interpretation of the elements of dischargeability, are reviewed de novo. *In re Woolsey,* 117 B.R. 524 (Bankr. 9th Cir.1990); *In re Rubin,* 875 F.2d 755, 758 (9th Cir.1989).

For the reasons set forth below, the Court REVERSES the judgment against Brown, and AFFIRMS–IN–PART and RE-MANDS–IN–PART the judgment in favor of Grabau.

## BACKGROUND

The Plaintiffs in the underlying action are elderly individuals or pension and profit sharing plans held by small businesses. The Plaintiffs all had dealings with the Allstate Investment Company ("Allstate")

which was in the business of marketing and selling second trust deeds. Allstate or a related entity typically acted as servicing agent for the beneficiaries of the trust deeds. As a result of borrower defaults, Allstate's trustee corporation foreclosed on properties pledged by defaulting borrowers and thus acquired an inventory of real property for its investors, the beneficiaries of the trust deeds.

## A. BROWN'S RESPONSIBILITIES AT ALLSTATE

Brown first became affiliated with Allstate in May, 1981. At that time, Allstate serviced approximately 3,000 loans with an aggregate principal balance of $55 million. Brown had been a licensed California real estate broker and served as both Chairman of the Board and as Allstate's designated real estate broker. This designation allowed Allstate to conduct activities requiring a license. Brown supervised 15 to 20 licensees employed by Allstate. In early 1982, Allstate developed a program to sell the approximately 10 parcels of real property owned ("REO") by Allstate. The program was developed by Lee Danna ("Danna"), then-president of Allstate, and was reviewed by Allstate's Chief Legal Counsel. Brown contends that he made no representations to the Plaintiffs regarding the investment. As supervising broker, Brown served on the loan committee of Allstate and reviewed trust accounts and spreadsheets prepared by the accounting department on a monthly basis. Brown contends that he had no reason to believe that the same procedures used for deed of trust placements would not be used with the REO investments. Brown further contends that he was not aware of any problems with the REO sales until after he left Allstate in June, 1982. Brown ended his employment with Allstate in June, 1982. He allowed himself to remain as the "broker of record" until September, 1982 when Grabau took over as Allstate's designated broker.

## B. GRABAU'S RESPONSIBILITIES AT ALLSTATE

Grabau obtained his California real estate salesman's license in 1978 and joined Allstate that year. By December 1981, Grabau became a licensed real estate broker. Grabau also acquired an ownership interest in Allstate in April 1981 and increased that interest in February, 1982.

In December 1981, the California Department of Real Estate conducted an investigation and audit of Allstate and concluded that Allstate was "out of trust" by at least $350,000. Plaintiffs contend that Lee Danna then developed a plan to quickly raise cash by selling fractional interests in REO properties. Danna prepared a sales package which indicated that Allstate was the owner of the properties, that the properties were suitable for rental, and that the investors would receive a fractional interest in the actual title to the properties and substantial returns on their investments.

Using sales agreements prepared by Allstate, Grabau sold fractional interests in ten separate REO properties to seven of the plaintiffs for a total of $92,000. Under the agreements, Allstate promised to manage the properties, obtain rental income from them, and pay off the existing indebtedness. The agreements also provided that after one year the properties would be sold by Allstate for Plaintiffs' benefit. Plaintiffs were guaranteed a 15% profit over their initial investment with any remaining balance to be split between Plaintiffs and Allstate.

Plaintiffs contend that Allstate never in fact owned any of the properties since they held title only as agent of the multiple beneficiaries of the original deeds of trust. Plaintiffs never received any return on their investment and no accounting of their investments has ever been made. In addition, Plaintiffs contend that the properties' potential for rental income was overstated and that the encumbrances on the properties were often greater than represented. Plaintiffs contend that Grabau knew of the problems in the REO program but never disclosed these facts to the Plaintiffs. Plaintiffs contend that Grabau failed to fulfill the duties required of real estate licensees and that Grabau unreasonably re-

lied on uncorroborated information from obsolete Allstate loan files and the opinions of Allstate's non-licensee employees.

Soon after Plaintiffs learned the true facts concerning their REO investments, Allstate filed for bankruptcy.

Grabau contends that he reasonably relied on the opinion of Allstate's in-house counsel who drafted the REO contracts. He also asserts that he believed that the REO transactions would be handled like loan packages, with the deposit of funds in an escrow account and the issuance of title insurance. Grabau further argues that he relied on representations made by Lee Danna, Allstate's President, regarding the equity value of the REO properties and the ultimate destination of the investor funds which he was required to deliver to Danna's Executive Secretary.

Neither Grabau nor any of the Plaintiffs allege that Brown ever made any misrepresentations about the investments or that he had any personal involvement in developing or selling the investment package.

## ANALYSIS

Under 11 U.S.C. § 523(a)(4), individuals may not be discharged from any debt arising from "fraud or defalcation while acting under a fiduciary capacity ..." Similarly, under 11 U.S.C. § 523(a)(2)(A), no discharge is allowed for debts arising from money obtained by "false pretenses, a false representation, or actual fraud ..." The Bankruptcy Court analyzed these two sections and made the following conclusions:

(1) Brown is liable as a fiduciary under § 523(a)(4) because:

(a) He was responsible for the supervision of salesmen under Cal.Bus. & Prof. Code § 10159.2; and

(b) He was acting as a fiduciary as defined by *In re Woolsey,* 117 B.R. 524 (Bankr. 9th Cir.1990);

(2) Grabau was not liable under § 523(a)(4) because he acted as a salesman

and not as a broker in his dealings with the Plaintiffs; and

(3) Grabau was not liable under § 523(a)(2) because he did not *knowingly* make false representations and he had no intent to deceive.

## I. BROWN'S APPEAL

■ Brown argues that the Bankruptcy Court erroneously interpreted Cal.Bus. & Prof.Code Section 10159.2 in determining that a fiduciary relationship existed between Brown and the Plaintiffs. Section 10159.2 provides that the officer serving as the "designated real estate broker" for the corporation: [1]

shall be responsible for the supervision and control of the activities conducted on behalf of the corporation by its officers and employees as necessary to ensure full compliance with the provisions of this division *including the supervision of salespersons* licensed to the corporation in the performance of acts for which a real estate license is required.

(emphasis added).

The Bankruptcy Court concluded that the addition of § 10159.2 in 1979 overruled the prior holding of *Walters v. Marler,* 83 Cal. App.3d 1, 147 Cal.Rptr. 655 (1st Dist.1978), and effectively imposed civil liability on designated real estate brokers who failed to properly supervise the corporation's employees:

Construing §§ 10211 and 10159.2 in light of the general policies of the real estate act, the court concludes that a designated broker is responsible to members of the public who have suffered financial harm as a result of the designated broker's failure to adequately supervise the corporation's salesmen. To hold otherwise would defeat the statute's purpose by reducing real estate licensees' accountability to the public for acts falling below the desired level of professional conduct.

Memorandum Opinion at 6.

■ There are several problems with this analysis of § 10159.2. While this

---

**1.** Under Cal.Bus. & Prof.Code § 10211, a corporation licensed as a real estate broker must appoint an individual who holds an individual broker's license to serve as its "designated real estate broker."

Court agrees that the purpose of the Real Estate Act is to raise the standards of the real estate profession, the Bankruptcy Court failed to acknowledge that this purpose is still accomplished even if the section is read to include only disciplinary sanctions on the individual broker. Nothing in the statutory scheme of the Real Estate Act, or the plain language of § 10159.2, suggests that it creates a private right of action against the designated broker, particularly in light of detailed provisions for disciplinary sanctions set forth in §§ 10175–10185. The most obvious interpretation of § 10159.2 is that it simply extended this disciplinary scheme to apply against designated brokers who failed to properly supervise employees. *See e.g. Norman v. Dept. of Real Estate*, 93 Cal. App.3d 768, 155 Cal.Rptr. 715 (1st Dist. 1979).[2]

In view of the fact that *Marler* was decided only one year before the 1979 amendment to the Real Estate Act, it is unlikely that the Legislature intended to overrule *Marler* without more explicit language in the statute or the legislative history.[3] In the absence of clear statutory language creating a private right of action against the broker, this Court is unwilling to ignore the corporate form and create such a private right of action based on an individual's status as "designated" broker. The Court finds, as a matter of law, that § 10159.2 does not, by itself, impose vicarious liability on Brown.

■ Plaintiffs urge that Brown can nonetheless be held liable under Cal.Bus. & Prof.Code § 10145(a), an issue which the Bankruptcy Court did not consider. Section 10145(a) provides that:

A real estate broker who accepts funds belonging to others in connection with any transaction subject to this part shall deposit all such funds which are not immediately placed into a neutral escrow depository or into the hands of the broker's principal, into a trust fund account maintained by the broker in a bank or recognized depository in this state. . . .

■ Plaintiffs contend that this section creates an independent *non-delegable* duty on the part of Brown, as Allstate's designated broker, to account for all funds received from the Plaintiffs. This argument has several flaws. First, the "real estate broker" referenced in the statute does not necessarily refer to Brown since it can be read to apply to the corporate licensee, Allstate. *See* Cal.Bus. & Prof.Code § 10006 (defining "person" as including a corporation) and § 10131 (defining "real estate broker" as a person engaging in certain acts). Second, nothing in the statute indicates that the duty is non-delegable with respect to the individual serving as the designated real estate broker.[4] Third, Brown had taken a six week leave of absence during the period when the funds were collected; therefore, any liability can only be based on Brown's failure to supervise the employees who actually collected the funds. As explained above, civil liability to third parties can not be based solely on the failure to supervise.

■ Finally, Brown does not fit the definition of fiduciary set out in *Woolsey*. The mere fact that an individual is a licensed real estate broker does not automatically create a fiduciary relationship with every client. *See In re Hooper*, 112 B.R. 1009, 1013 (Bank. 9th Cir.1990) (no fiduciary relationship exists because, while defendant directly participated in the transaction, the defendant's activities that led to the debt did "not fall within the scope of

---

**2.** This is the only California case cited by the Bankruptcy Court which involves the failure to supervise and it dealt *only with a disciplinary sanction* imposed on the broker. Nothing in the case suggests that civil liability to third parties could also be imposed.

**3.** None of the legislative history cited by the parties or the Bankruptcy Court directly addresses the civil liability issue.

**4.** None of the cases cited by Plaintiff apply to this case. In *Burch v. Argus Properties, Inc.*, 92 Cal.App.3d 128, 154 Cal.Rptr. 485 (4th Dist. 1979), the Defendant was the *corporate entity*. In *Haigler v. Donnelly*, 18 Cal.2d 674, 117 P.2d 331 (1941), the broker who actually collected the funds was the individual defendant. In this case, Brown never touched the funds and any liability would have to be based on his supervisory position at the corporate broker.

the acts of a real estate broker as defined by Cal.Bus. & Prof.Code § 10131"). The *Woolsey* court imposed liability because the individual defendant had *direct* involvement in the transaction *and* his activities were within the scope of his duties as a licensed broker.[5] Thus, the existence of a fiduciary relationship for purposes of § 523(a)(4) requires that the debt arise from defendant's personal acts or omissions relating to his real estate license.

In this case, the *corporate entity*, Allstate Investment Company, was the licensed broker that dealt with the Plaintiffs. Undoubtedly, Allstate acted as a fiduciary under *Woolsey*, but Brown had no involvement with the fiduciary transactions. In fact, Brown had taken a six-week leave of absence from Allstate during the period when Plaintiffs purchased the properties. Brown did not engage in the type of active conduct required for a fiduciary relationship.

Moreover, this Court's analysis of Brown's status is consistent with the requirement in *Woolsey* that the "trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a 'trustee' before the wrong and without reference to it." *Woolsey*, 117 B.R. at 529. Brown had no relationship with the Plaintiffs, fiduciary or otherwise, prior to the wrongdoing. As a result, any responsibility for Plaintiffs' loss could only arise from a trust imposed by law; that legal relationship does not transform Brown into a fiduciary for purposes of the Bankruptcy Code. "Fiduciary" in the context of § 523(a)(4) has a limited meaning, which does not include Brown:

> The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and *not as a result of the act of wrongdoing. Thus, constructive or resulting trusts are excluded.*

*In re Pedrazzini*, 644 F.2d 756, 758–59 (9th Cir.1981) (emphasis added) (citation omitted).

After examining the status of real estate brokers under California law, the Court finds no support for the proposition that California treats the designated broker as a fiduciary for every client that enters the corporate office without regard to whether the individual broker ever met the client, had any involvement in the transactions, or collected client funds. Moreover, the Court finds as a matter of law that negligent supervision, without any active participation in the fraudulent transaction, is not sufficient to create a fiduciary relationship for the purposes of non-dischargeability. As a result, Brown has no liability under § 523(a)(4). The Court REVERSES the Bankruptcy Court's judgment and REMANDS with instructions to enter judgment in Brown's favor.[6]

## II. RANADIVE'S APPEAL OF JUDGMENT IN FAVOR OF GRABAU

### A. Liability Under § 523(a)(4)

The Bankruptcy Court held that, even though Grabau was a licensed broker at the time of the transaction, he acted only as a salesman and therefore was not in a fiduciary relationship with the Plaintiffs. The Plaintiffs contend that no such distinction exists.

As discussed above, the critical inquiry under both *Woolsey* and *Hooper* is whether the defendant "was acting within the scope of his licensed activities." *See Woolsey*, 117 B.R. at 530. The Bankruptcy Court's distinction between acting as a salesman and acting as a broker is consistent with this inquiry. Cal.Bus. & Prof. Code § 10132 defines "real estate salesman" as someone "employed by a licensed real estate broker to do one or more of the act set forth in Sections 10131, 10131.1, 10131.2, 10131.3, 10131.6 [defining the ac-

---

**5.** In *Woolsey,* the broker himself made material misrepresentations, delivered real estate title documents, and arranged for the transfer of funds.

**6.** Since the Court finds that Brown is not a fiduciary, it need not reach the issue of defalcation. Similarly, the Court need not decide whether Brown should be credited with amounts previously recovered by the Plaintiffs.

tivities of a real estate broker]." Thus, the Real Estate Act contemplates that someone can act as a salesman without necessarily qualifying as a real estate broker. In that instance, the real estate salesman is merely an agent of the employing broker. *See e.g. People v. Asuncion*, 152 Cal.App.3d 422, 425, 199 Cal.Rptr. 514 (2nd Dist.1984) ("a real estate salesman is an agent of his broker-employer as a matter of law"); *Grubb & Ellis Co. v. Spengler*, 143 Cal. App.3d 890, 895, 192 Cal.Rptr. 637 (2nd Dist.1983) ("It seems clear that for purposes of the administration of the real estate law, the salesperson is the employee and agent of the broker"). In this case, the Bankruptcy Court concluded that since most of Grabau's duties did not require a license and Allstate never procured an additional license pursuant to § 10158,[7] Grabau "traded on Mr. Brown's license as an agent for Allstate." Memorandum Opinion at 10. This conclusion is further supported by the fact that Grabau merely acted as a conduit for delivering the Plaintiffs' funds to those officials at Allstate who were responsible for placing the funds in a trust account. In doing so, Grabau was discharging his statutory duties as a *salesperson* under § 10145(c).[8]

The net result of the Bankruptcy Court's conclusion that Grabau was acting as a salesperson is that Grabau was not acting pursuant to his individual license, but rather was carrying out his duties under Allstate's corporate license. Grabau was therefore not a fiduciary under the standards set out in *Woolsey*. The Court AFFIRMS the Bankruptcy Court's decision with respect to liability under § 523(a)(4).

**7.** Cal.Bus. & Prof.Code § 10158 provides:

When a real estate license is issued to a corporation, if it desires any of its officers other than the officer designated by it pursuant to Section 10211, to act under its license *as a real estate broker*, it shall procure an additional license to so employ each of such additional officers.

(emphasis added).

**8.** Cal.Bus. & Prof.Code § 10145(c) provides:

A real estate sales person who accepts trust funds from others on behalf of the broker under whom he or she is licensed, shall im-

### B. Liability Under § 523(a)(2)

The Bankruptcy Court found that Grabau was not liable under § 523(a)(2) because he did not intend to deceive or *knowingly* make false statements. The court held that actual knowledge is required under *In re Rubin*, 875 F.2d 755, 759 (9th Cir.1989), and that Grabau's misstatements were based on representations made by Lee Danna which Grabau believed to be true. Memorandum Opinion at 11. The Plaintiffs do not challenge the finding that Grabau did not know the statements to be false but rather insist that, even under *Rubin*, intent to deceive can still be inferred from reckless indifference to the truth.

This Court agrees that the proper standard under § 523(a)(2) is actual knowledge or reckless indifference to the truth. *See Rubin*, 875 F.2d at 759 ("declarations made with reckless indifference for the truth may be found to be fraudulent"); *In re Houtman*, 568 F.2d 651, 656 (9th Cir. 1978) (construing former section 17(a)(2) and noting "It makes good sense to hold that either actual knowledge of the falsity of a statement, or reckless disregard for its truth, satisfies the scienter requirement for nondischargeability of a debt"). The Bankruptcy Court made no findings regarding whether Grabau should have questioned the transaction and whether he acted recklessly in relying on Danna's representations. The Court therefore REMANDS this matter to the Bankruptcy for the limited purpose of determining whether Grabau had the requisite culpability for non-dischargeability under § 523(a)(2).[9]

mediately deliver the funds to the broker or, if so directed by the broker, shall place the funds into the hands of the broker's principal, into a neutral escrow depository, or shall deposit the funds into the broker's trust fund account.

**9.** This remand does not include any representations that Grabau made to Plaintiff Ranadive after Ranadive had already invested with Allstate. This Court AFFIRMS the Bankruptcy court's holding that such representations could not have caused Ranadive's loss. *See Rubin*, 875 F.2d at 759 (fraud under § 523(a)(2) requires showing of causation).

## CONCLUSION

For the reasons set forth above, the Court REVERSES the judgment against Brown, and AFFIRMS–IN–PART and RE-MANDS–IN–PART the judgment in favor of Grabau.

The Clerk of the Court is directed to close the file.

SO ORDERED.