In re Eric WOOSLEY, d/b/a Trans National Real Estate, d/b/a Trans National Development, d/b/a Trans National Health Care, d/b/a Paso Robles Investments, d/b/a Oak Creek Plaza Ltd., d/b/a Noble Oaks Limited, Debtor.

Eric WOOSLEY, d/b/a Trans National Real Estate, d/b/a Trans National Development, d/b/a Trans National Health Care, d/b/a Paso Robles Investments, d/b/a Oak Creek Plaza Ltd., d/b/a Noble Oaks Limited, Appellant,

v.

Jennifer EDWARDS, Appellee.

BAP No. CC–88–2127 VMeJ.

Bankruptcy No. LA 87–05621 NRE.

Adv. No. LA 87–01532 NRE.

United States Bankruptcy Appellate Panel, Ninth Circuit.

Argued and Submitted June 15, 1989.

Decided Aug. 17, 1990.

David Y. Farmer, San Luis Obispo, Cal., for appellant.

David C. Peterson, Atascadero, Cal., for appellee.

Before VOLINN, MEYERS, and JONES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

The debtor appealed an adverse judgment under § 523(a)(2)[1] for a debt incurred by fraud and § 523(a)(4) for defalcation or fraud by a fiduciary, arising from his role in the plaintiff/creditor's real estate investments. We affirm.

## FACTS

Debtor and appellant Eric Woosley was a real estate agent licensed by the State of California. He also engaged in purchasing and developing real estate on his own behalf as a general partner in several ventures, including Paso Robles Investments ("PRI").

Creditor and appellee Jennifer Edwards started investing with Mr. Woosley in January, 1984, when she was 19 years old.[2] She had obtained funds in 1983 through a personal injury claim arising from an automobile accident that had left her paralyzed from the waist down. The parties stipulated that she relied upon the monies recovered "to provide for her necessities of life."

In January, 1984, Ms. Edwards met with Mr. Woosley concerning his request that she loan money to PRI. The venture borrowed $43,100 from Ms. Edwards, secured by a deed of trust on certain real property. Mr. Woosley arranged for the documentation. The parties to this appeal expressly stipulated that "Edwards was unsophisticated with regards to real estate investments and relied upon debtor to document the transactions between the parties." This real property was later sold and the $43,100 loan was repaid in full.

During April, 1984, Mr. Woosley "assisted Edwards with the purchase of a residence by suggesting the purchase price to be offered and in obtaining the loan for said purchase. Mr. Woosley reviewed no documents regarding this transaction and did not receive a commission."

In March, 1984, at Mr. Woosley's request, Ms. Edwards made a $90,000 loan to PRI, secured by certain real estate. In April, 1984, and again in April, 1985, at Mr. Woosley's request, Ms. Edwards reconveyed her interests in the deeds of trust then securing the $90,000 loan, each time receiving from Mr. Woosley a new recorded deed of trust on other real property.

In October, 1984, Mr. Woosley arranged a separate $40,000 from Ms. Edwards. That loan was also secured by a deed of trust on still other real property.

In December, 1985, again at Mr. Woosley's request, Ms. Edwards reconveyed the replacement deed of trust securing her $90,000 loan, but this time did not receive substitute security. In February, 1986, also at Mr. Woosley's request, Ms. Edwards reconveyed the $40,000 deed of trust without receiving substitute security. Ms. Edwards claimed Mr. Woosley represented that other real property was set aside for her and that the paperwork for her security was being prepared. Mr. Woosley testified that he advised her that the partnership lacked any property for security, but that she would receive new deeds of trust when other property was acquired. The court credited Ms. Edwards' testimony over Mr. Woosley's. It is undisputed that no property was earmarked for Ms. Edwards and no documents were being prepared to resecure her loans.

Following Ms. Edwards' multiple requests for security, Mr. Woosley delivered a deed of trust on October 7, 1986, for the ostensible purpose of securing the entire outstanding debt of $130,000. When deliv-

1. Section references herein refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. The bankruptcy court's findings state that the appellee was 19 at the time, whereas the appellee's brief states that she was 21 at the time. The difference is not material for the purposes of this decision.

ered, unlike the earlier deeds of trust, it had not been recorded. Moreover, Mid–State Bank held a recorded first deed of trust, securing an obligation of $269,954, on the same property.

Three days later, October 10, 1986, the partners of PRI executed a deed of trust affecting the same property, in favor of Heritage Oaks Bank, to secure an obligation of $440,000. The bank's deed of trust was recorded on October 15, 1986, which was within one week after Ms. Edwards received hers.

It is undisputed that Mr. Woosley did not tell Ms. Edwards that the $440,000 loan from Heritage Oaks Bank was due to close within a few days, that the bank loan would be secured by the same parcel as her loan, and that her deed of trust was unrecorded. It is also undisputed that he did not inform the bank about Ms. Edwards' interest. Before Ms. Edwards' deed was filed with the advice of a lawyer on March 3, 1987, tax liens totaling $76,316.76 had also been recorded against the property. By then, Mid–State Bank had also recorded a notice of default. Mr. Woosley's bankruptcy followed on March 24, 1987. The property was sold at a Trustee's Sale on July 9, 1987, conducted by Mid–State Bank pursuant to its deed of trust. Subsequently, the Internal Revenue Service redeemed the property and sold it at an auction resulting in an additional $112,000 being paid to lienholders that were junior to Mid–State Bank but senior to Ms. Edwards. Ms. Edwards received nothing from this sale.

## PROCEEDINGS

On July 29, 1987, Ms. Edwards commenced an action to determine the dischargeability of her $130,000 claim. The complaint did not cite any particular section of the Code, but alleged misrepresentations by Mr. Woosley, identifying him as a real estate licensee. Issues listed for adjudication in the pretrial order were separately addressed to Mr. Woosley's alleged fraud and to his alleged breach of fiduciary duties.

After trial on August 11, 1988, the court found that a fiduciary relationship developed between Mr. Woosley and Ms. Edwards by virtue of the assistance he provided her and the disparity of capabilities between them. The court found further that the relationship was "encouraged and fostered" by Mr. Woosley. By the time that Ms. Edwards reconveyed her deed of trust on the $90,000 loan for the last time in December, 1985, in the court's view, she "completely trusted Woosley and allowed him to act as her agent in both deciding the propriety of giving up her interest in the deed of trust and in having the appropriate documents prepared and recorded to secure her loan."

The court found that the final reconveyances resulted from material misrepresentations, and that failure to record the October, 1986, deed of trust stemmed from Mr. Woosley's nondisclosures. The court stated that Mr. Woosley "was aware of the lack of sophistication of plaintiff and knew or should have known that she would not: 1) recognize that the deed of trust had not been recorded, 2) know that the failure to record the document could render it useless as security, and 3) realize that the failure to record the deed of trust immediately would cause it to be junior to the deed of trust to be recorded shortly thereafter by HERITAGE OAKS BANK." With respect to Ms. Edwards' damages, the court found that she could have recovered her $40,000 loan if she had not conveyed her properly recorded deeds of trust in reliance on Mr. Woosley's mispresentations. In addition, the court found that she could have recovered the entire $130,000 if the October, 1986, deed of trust had been promptly recorded.

The court then concluded that Mr. Woosley was a fiduciary, his conduct constituted fraud while acting as a fiduciary, and that conduct proximately caused Ms. Edwards' loss of the monies loaned to PRI "along with the interest permitted by law." Although Ms. Edwards sought an additional amount for interest, costs and attorneys' fees, the court exercised its equity powers to limit Mr. Woosley's obligation to $130,000. The court concluded that the wrongful acts "fit the description of § 523(a)(4),

and the obligation of defendant to plaintiff is therefore non-dischargeable;" and that the court had discretion to require that each party bear its own attorneys' fees and costs.

The findings and conclusions were entered on December 5, 1988. Mr. Woosley filed a notice of appeal on December 12, 1988, explicitly appealing from the findings and conclusions. After this court ordered that the appellant produce evidence of entry of a final, appealable judgment, the appellant submitted a copy of an order that had been filed, lodged and signed by the bankruptcy judge on December 1, 1988, but ·through a clerical error was not entered until June 18, 1989. The judgment cited § 523(a)(2) (obtaining property by fraud), as well as § 523(a)(4) (fraud while acting as a fiduciary), as grounds for nondischargeability of Mr. Woosley's debt to Ms. Edwards, although the findings and conclusions mentioned only § 523(a)(4).

## ISSUES

■ Mr. Woosley's discussion of the facts departs from the court's factual findings in a number of respects. Yet Mr. Woosley has not explicitly challenged any of the court's factual findings, nor demonstrated that any of these findings are unsupported by the record. Mr. Woosley therefore failed to preserve any challenge to the court's factual findings.

The legal issues raised are: (1) whether appellate jurisdiction exists when a separate judgment is not entered until after the notice of appeal is filed; (2) whether a fiduciary exists within the meaning of § 523(a)(4) by virtue of the placement of one's reliance, confidence and trust in another with substantially superior experience and knowledge and his encouragement of the reliance; (3) whether the fiduciary duties of a real estate licensee arising under state statute apply to transactions in which the licensee solicits loans for a real estate venture in which he is a general partner, and if so whether these duties establish a fiduciary relationship for the purposes of § 523(a)(4); (4) whether the bankruptcy court can be affirmed under

§ 523(a)(2); and (5) whether the amount of the judgment was proper.

## STANDARD OF REVIEW

■ Questions of law, including statutory interpretation of the elements of dischargeability causes of action, are reviewed *de novo. See. e.g., Rubin v. West (In re Rubin)*, 875 F.2d 755, 758 (9th Cir.1989) (citing *Briney v. Burley (In re Burley)*, 738 F.2d 981, 986 (9th Cir.1984)).

## DISCUSSION

### A. Appellate Jurisdiction

■ A question arises as to appellate jurisdiction due to the fact that the notice of appeal in this case was filed on December 12, 1988, whereas the final judgment was not entered on the docket until June 16, 1989, although it was filed December 1, 1988. The Findings of Fact and Conclusions of Law were entered on December 5, 1988. Bankr. Rule 9021, incorporating Fed.R.Civ.P. 58, states that "every judgment shall be set forth on a separate document. A judgment is effective when entered [on the docket kept by the Clerk of the Bankruptcy Court]." The purpose of the separate judgment requirement of Fed. R.Civ.P. 58 is to clarify when the time for an appeal begins to run. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 98 S.Ct. 1117, 1119, 55 L.Ed.2d 357 (1978).

> Certainty as to timeliness, however, is not advanced by holding that appellate jurisdiction does not exist absent a separate judgment. If by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter a separate judgment, from which a timely appeal would then be taken.

*Bankers Trust Co. v. Mallis*, 435 U.S. at 385, 98 S.Ct. at 1120.

The Supreme Court has ruled that the separate judgment requirement may be waived by the parties. *Id.* at 384, 98 S.Ct. at 1119. In the present case, while there may be a question as to the timeliness of

the appeal because no separate judgment was entered prior to the appeal, neither party has raised this issue. In order to prevent the loss of the right to appeal, we conclude that the parties have waived the requirement of Bankr. Rule 9021. *See Horton v. Rehbein (In re Rehbein)*, 60 B.R. 436, 439 (9th Cir. BAP 1986).

**B. Section 523(a)(4)**

Section 523(a) provides that:

(a) A discharge under § 727 ... does not discharge an individual debtor from any debt—

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity....

The Ninth Circuit has stated:

The meaning of "fiduciary" in § 523(a)(4) is an issue of federal law. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934); [*Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 758 (9th Cir.1981)]. The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context. *·See Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338–39 (5th Cir.1980). The trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a "trustee" before the wrong and without reference to it. *Davis*, 293 U.S. at 333, 55 S.Ct. at 153–54; *Pedrazzini*, 644 F.2d at 758. These requirements eliminate constructive, resulting or implied trusts. *Pedrazzini*, 644 F.2d at 759.

Although the concept of fiduciary is to be narrowly defined as a matter of federal law, state law is to be consulted to determine when a trust in this strict sense exists. *Id.* at 758.

*Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986). The Ninth Circuit went on to hold that under California law, partners are trustees over the assets of the partnership and are therefore fiduciaries within the meaning of § 523(a)(4). Thus a debt from the debtor to his partner based on the debtor taking more than his rightful share of the profits was not dischargeable.

■ Although under *Ragsdale v. Haller*, Mr. Woosley's prior dealings with Ms. Edwards by themselves may not have created a fiduciary relationship within the meaning of § 523(a)(4), Mr. Woosley's real estate license carries with it fiduciary obligations to his principals under California law when carrying out licensed activities. With respect to licensed activities, real estate licensees have the same obligations as trustees under California law, including duties to refrain from making misrepresentations or obtaining any advantage over their principals, and to make the fullest disclosure of all material facts concerning the transaction that might affect their principal's decision. *Smith v. Zak*, 20 Cal. App.3d 785, 792, 98 Cal.Rptr. 242, 246–47 (1971); *Batson v. Strehlow*, 68 Cal.2d 662, 675, 68 Cal.Rptr. 589, 598–99, 441 P.2d 101, 110–11 (1968).

■ Licensed activities include:

solicit[ing] borrowers or lenders for or negotiat[ing] loans or collect[ing] payments or perform[ing] services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property....

Cal.Bus. & Prof.Code § 10131(d). The fiduciary obligations accompanying these licensed activities are sufficient to establish a "fiduciary capacity" within the meaning of § 523(a)(4). *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir.1987) (citing *In re Pedrazzini*, 644 F.2d at 758 n. 2 (citing former Act § 17(a)(4)); *See Ragsdale v. Haller*, 780 F.2d at 796–97. The trust giving rise to the fiduciary relationship arose before any wrongdoing, not as a result of it. *See* 780 F.2d at 796. As with partnership fiduciary duties, the fiduciary obligations of a real estate licensee do not arise merely from the beneficiary's "confidence, trust and good faith" with respect to the trustee; they are imposed explicitly by state law.

■ Mr. Woosley concedes that statutory fiduciary duties attach to actions taken under his license, but contends that any conduct associated with Ms. Edwards was

not in his licensed capacity because he was acting on his own behalf as a borrower, rather than on her behalf as her real estate agent. Contrary to his contention, however, Mr. Woosley was in fact acting in his licensed capacity as it has been very broadly construed under California law. In *Stickel v. Harris*, 196 Cal.App.3d 575, 242 Cal.Rptr. 88 (1988), a real estate licensee negotiated a loan for a venture in which he was a general partner, as did Mr. Woosley. The court held that for purposes of the usury statute, which exempts loans arranged by licensed brokers, the broker was acting in his licensed capacity. 196 Cal. App.3d at 585, 242 Cal.Rptr. at 94. The court distinguished the decision in *Winnett v. Roberts*, 179 Cal.App.3d 909, 921, 225 Cal.Rptr. 82, 88 (1986), upon which Mr. Woosley relies. *Stickel*, 196 Cal.App.3d at 585 n. 8, 242 Cal.Rptr. at 94 n. 8.[3] The court in *Stickel* stated broadly that "[a] wayward licensee is not a loose cannon free to inflict havoc upon an unsuspecting public, untethered by the regulatory power of the authority which provided that license. That power could have reached [him] even if his sole identity had been that of a borrower acting in a purely personal capacity." 196 Cal.App.3d at 589, 242 Cal.Rptr. at 97. Thus Mr. Woosley was acting within the scope of his licensed activities when he arranged the loans from Ms. Edwards to PRI, and the reconveyances of the deeds of trust and the execution of new ones, and was Ms. Edwards' fiduciary under California law.

■ Mr. Woosley took advantage of Ms. Edwards by giving her a deed of trust without recording it. He calculatedly did not disclose to her that she would need to record the deed of trust to protect her rights. Mr. Woosley had recorded the deeds of trust for Ms. Edwards in prior similar transactions. He had an obligation to tell her that he was not recording the deed of trust in question and that if she did not record it immediately she was in jeopardy of losing her priority for security on the property. In addition, he intentionally concealed his negotiations and pending closure of the loan with Heritage Bank, which loan would be secured by a deed of trust on the same property for which Ms. Edwards had a deed of trust. Thus, Mr. Edwards breached his fiduciary duty to Ms. Edwards and the debt incurred thereby is nondischargeable.

### C. Section 523(a)(2)

■ This panel can affirm based on any ground finding adequate support in the record. *Grover v. Gulino (In re Gulino)*, 779 F.2d 546, 552 (9th Cir.1985); *United States v. $129,374 in United States Currency*, 769 F.2d 583, 586 (9th Cir.1985); *Hansen v. Finn (In re Curry & Sorenson, Inc.)*, 57 B.R. 824, 829 n. 5 (9th Cir. BAP 1986). The bankruptcy court concluded that Ms. Edwards' $130,000 claim against Mr. Woosley was excepted from discharge under § 523(a)(4). The judgment, however, refers to both §§ 523(a)(4) and 523(a)(2).

■ Section 523 provides in pertinent part that:

(a) A discharge under § 727 ... does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud....

The court found as a matter of fact that Mr. Woosley solicited the reconveyances of the $90,000 and $40,000 deeds of trust from Ms. Edwards on the advice that "another parcel of property had been set aside for her and that the papers were in process to secure her loan against this property." The court further found that

No substitute security was provided by WOOSLEY at that time, and no property had been set aside for plaintiff [Ms. Edwards]. There were also no documents being prepared to secure plaintiff's loan.

---

**3.** The court in *Winnett* applied the usury restrictions to a loan obtained by a real estate broker who borrowed to pay his personal bills, and for

which the collateral was real estate that he owned jointly with his wife.

If plaintiff had known the true facts at this time, she would not have provided the reconveyance requested by WOOSLEY.

These findings are sufficient to support the conclusion that Mr. Woosley obtained the last two trust deed reconveyances by "false pretenses, a false representation, or actual fraud...." Thus the bankruptcy court's judgement can be affirmed on the basis of § 523(a)(2).

## D. Damages

 Under either §§ 523(a)(4) or 523(a)(2), Mr. Woosley falsely represented that the deed of trust he gave Ms. Edwards was sufficient to fully secure her loans. The court was correct in finding the entire $130,000 to be nondischargeable. Mr. Woosley had an obligation to inform Ms. Edwards if in fact the property was not of sufficient value to secure her loans. If Mr. Woosley knew the value of the property was not sufficient to secure her loans, assuming the deed of trust had been promptly recorded, he misrepresented to Ms. Edwards that she was receiving adequate security.

Mr. Woosley contends that the court erred in determining that the entire debt of $130,000 was nondischargeable. He argues that had Ms. Edwards recorded the deed of trust in question on October 7, 1986, when she received it, she would only have received $112,000 from the sale, as did creditors junior to Mid–State Bank but senior to Ms. Edwards. Mr. Woosley contends that Ms. Edwards' damage, if any, must be limited to $18,000, the amount she might have lost even if she had properly recorded the deed of trust. Mr. Woosley's argument on this issue is premised on the notion that he had no duty to record the deed of trust or to inform Ms. Edwards of the need to record it. As previously discussed, Mr. Woosley did in fact have such a duty. It was his breach of a fiduciary duty which led to the deed of trust not being recorded, causing the entire loss to Ms. Edwards.

## CONCLUSION

Under California law, Mr. Woosley owed a fiduciary obligation to Ms. Edwards by virtue of his engaging in licensed activities while acting in his capacity as a real estate licensee. Obtaining reconveyances through misrepresenting the availability of alternate security and delivering an unrecorded deed of trust, without advising her of the fact that it was not recorded or of the necessity of recording it, constituted breaches of his fiduciary duty, especially given the fact that he had seen to the recording of all of the prior deeds of trust he had given her. The court below was correct in applying § 523(a)(4). In addition, the bankruptcy court's holding is warranted under § 523(a)(2). Accordingly, the judgment is AFFIRMED.