In the Matter of DIVERSIFIED
CONTRACT SERVICES
INC., Debtor.

Dr. Don LIVINGSTON, dba Work
Fitness Institute, Appellant,

v.

John T. KENDALL, Appellee.

No. C–92–3875 EFL.

United States District Court,
N.D. California.

Aug. 23, 1993.

Terrence V. Ponsford, Bronson, Bronson & McKinnon, San Francisco, CA, for appellant.

Daniel F. Patchin, Steefel, Levitt & Weiss, San Francisco, CA, for appellee and Trustee.

## ORDER

LYNCH, District Judge.

### I. *Introduction*

Appellant Dr. Don Livingston, dba Work Fitness Institute ["Livingston"], filed this appeal from a final judgment of the Honorable Randall J. Newsome, United States Bankruptcy Judge for the Bankruptcy Court, Northern District of California. This Court has jurisdiction pursuant to Federal Rule of Bankruptcy Procedure 8001(a).

On August 12, 1991, Carolyn N. Lorence, Chapter 11 Trustee of the bankruptcy estate of Diversified Contract Services, Inc. ["DCS"], filed an action against Livingston seeking an avoidance of a $75,000 transfer on the grounds that it was either a fraudulent conveyance or a preferential transfer. Following a bench trial, the Honorable Randall J. Newsome found that the payment was not a fraudulent conveyance, but was an avoidable preference. Livingston appeals.[1] Counsel for both parties were

---

**1.** After the appeal was filed, DCS's case was converted into a case under Chapter 7 of Title

present at oral argument before this Court on April 9, 1993.

## II. *Background*

Before filing bankruptcy, DCS was operated by its president and majority shareholder, Kenneth Smith ["Smith"]. Livingston was a longtime friend of Smith. In early 1989, Smith asked Livingston to loan him $75,000 so that DCS could meet its payroll obligations while it awaited payment of several receivables. On February 1, 1989, Livingston delivered to Smith a check in the amount of $75,000 drawn from the Work Fitness Institute account, and Smith executed a promissory note in that sum in favor of Livingston. The promissory note stated:

> FOR VALUE RECEIVED: I, Kenneth Smith promise to pay Dr. Don R. Livingston, d.b.a. Work Fitness Institute, at such place designated by the holder of this note, in lawful money of the United States of America, the sum of Seventy Five Thousand Dollars ($75,000) without interest by the close of business on February 13, 1989.

The note made no mention of DCS or its liability for the loan. Smith deposited the $75,000 in his personal checking account, and then wrote a check in the same amount to DCS. The payroll was paid out of those funds. On February 13, 1989, a check was drawn on DCS's account in the amount of $75,000 payable to Livingston.

On June 29, 1989, 136 days later, DCS filed for relief under Chapter 11 of Title 11 of the United States Code.

Livingston bases his appeal on two grounds. First, he alleges that the bankruptcy court erred in its factual finding that the events described above constitute two separate loans: Loan 1 between Livingston and Smith, and Loan 2 between Smith and DCS. Second, he alleges that the bankruptcy court erred in applying the *Deprizio* doctrine, based on the Seventh Circuit case of *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio)*, 874 F.2d 1186 (7th Cir.1989), in finding that there

was an avoidable preference which could be recovered from Livingston.

## III. *Discussion*

### A. *Standard of Review*

In reviewing the decision of a bankruptcy court, the district court acts as an appellate court and is authorized to affirm, modify or reverse a bankruptcy court's order, or to remand to the bankruptcy court. Fed.R.Bankr.P. 8013. The standard of review differs for questions of law and questions of fact. The bankruptcy court's conclusions of law are reviewed *de novo. In re Alcala*, 918 F.2d 99, 103 (9th Cir.1990). The bankruptcy court's findings of facts should not be set aside unless they are clearly erroneous. *Id.;* Fed. R.Bankr.P. 8013. The bankruptcy court's opportunity to judge the credibility of witnesses is entitled to due regard. Fed. R.Bankr.P. 8013. A finding is clearly erroneous only if "based on the entire evidence," a court "is left with a definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 565, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518 (1985). Thus, the bankruptcy court's application of the *Deprizio* doctrine must be reviewed *de novo*, while its findings of fact regarding the structure of the payment of monies is reviewed under the clearly erroneous standard.

### B. *Findings of Facts*

This Court reviews the bankruptcy court's findings of fact to determine if they are clearly erroneous. Livingston here challenges the bankruptcy court's finding that there were two loans: one between Livingston and Smith, and another between Smith and DCS. Livingston alleges that by doing so, the bankruptcy court elevated form over substance. Livingston contends that in reality, there was a single loan from Livingston to DCS.

This Court cannot disturb the bankruptcy court's findings of fact. There is sufficient evidence to show the existence of two loans. The evidence shows that Livingston

11, and John T. Kendall ["Kendall"] was appointed trustee of the bankruptcy estate.

wrote a check to Smith, for which Smith, and Smith alone, signed a promissory note. The promissory note made no mention of DCS or its liability for the loan, nor does it ensure that the money would be used to pay DCS' payroll. Although both Smith and Livingston testified to the bankruptcy court that they both intended the money be used to fund DCS, Smith could have used the money for any purpose. The evidence also shows that Smith deposited the money in his personal account and wrote a check to DCS. Livingston has not disputed the existence of this evidence; he merely argues that finding two loans was an elevation of form over substance. However, Livingston and Smith chose the form of their transaction, and the facts support the bankruptcy court's finding with respect to that transaction. Accordingly, the Court will not disturb the bankruptcy court's findings of fact.

## C. *Conclusions of Law*

Livingston argues that the bankruptcy court erred in following the controversial *Deprizio* doctrine. This doctrine was expounded in a recent Seventh Circuit case and has not been addressed or adopted by the Ninth Circuit.

The bankruptcy court concluded that Smith, an insider, was a creditor of DCS based on the loan of $75,000 from Smith to DCS. The court further found that the $75,000 payment from DCS to Livingston was a transfer made on account of an antecedent debt owed to Smith, an insider, by DCS, and that the transfer was made for the benefit of Smith because it extinguished Smith's liability to Livingston. The bankruptcy court concluded that the transfer was avoidable as a transfer. It then applied the *Deprizio* doctrine in finding that Livingston was the initial transferee of the transfer, and that the trustee was entitled to recover the value of the transfer from Livingston.

### 1. *Preferences*

Preference actions, provided for in the Bankruptcy Code at 11 U.S.C. § 547(b), are intended to prevent a debtor from fa-voring one creditor over another. *See Union Bank v. Wolas,* —— U.S. ——, ——, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991). When a preferential payment has been made, the trustee may avoid that transfer. Section 547(b) provides as follows:

> The trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Transfers made by the debtor within 90 days of the date of the bankruptcy petition are subject to preference actions, regardless of who receives the transfer. 11 U.S.C. § 547(b)(4)(A). Transfers made to an insider of the debtor, such as an officer or director of a corporation, *see* 11 U.S.C. § 101(31), are preferential if made within one year of filing the bankruptcy petition. 11 U.S.C. § 547(b)(4)(B). This extended preference period for insiders is designed to prevent an insider from benefiting from its superior position of influence and knowledge relative to other creditors.

### 2. *The Deprizio Doctrine*
#### a. *Deprizio*

In *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio),* 874 F.2d 1186 (7th

Cir.1989) ["*Deprizio* "], the Seventh Circuit found that the insider reach-back period applied to a non-insider creditor who received payment from the debtor on a loan guaranteed by the insider. In that case, the debtor company borrowed money from a number of sources. Each of these loans was guaranteed by an insider of the company. The debtor company made some payments on these loans, thereby reducing the liability of the insider-guarantor.

The *Deprizio* court found that because the creditor had a guarantee from an insider who benefitted from the transfer through the reduction of liability, the one-year reach-back period applied. The court then found that § 550 allows repayment by the "initial transferee" of the transfer which was made for the benefit of an insider. Section 550 provides in pertinent part:

to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit the transfer was made.

The *Deprizio* doctrine holds that this allows the trustee to recover either from the entity for whose benefit the transfer was made, that is, the insider, or from the initial transferee, namely, the non-insider who received the payment. This creates an extended reach-back period. The *Deprizio* court held that this result was compelled by the "plain language" of sections 547 and 550.

The *Deprizio* doctrine and its plain language approach has been the subject of great scholarly controversy.[2] Prior to *Deprizio*, the extended reach-back period was applied by only a minority of courts. Other courts took an equitable approach in determining that a preference could not be re-covered from a non-insider who was paid between 90 days and one year of the filing of a bankruptcy petition.

### b. *Other Circuits*

After the Seventh Circuit adopted extended reach-back period, both the Sixth Circuit and the Tenth Circuit followed suit. *In re C–L Cartage Co.*, 899 F.2d 1490 (6th Cir.1990); *In re Robinson Bros. Drilling, Inc.*, 892 F.2d 850 (10th Cir.1989), *mem aff'g Lowrey v. First National Bank*, 97 B.R. 77 (W.D.Okl.1988). The Fourth Circuit, however, has declined "to comment on the viability of the theory." *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 483 n. 2 (4th Cir.1992).

*In re Robinson Bros. Drilling*, 892 F.2d 850, presented facts similar to those in *Deprizio*, and the Tenth Circuit reached the same conclusion. In *In re Robinson Bros. Drilling*, an insider guaranteed debts owed by the debtor company to certain creditors. These creditors were not insiders. During the period between 90 days and one year before the debtor entered bankruptcy, it made payments to non-insider creditors on those guaranteed debts. The court determined that the plain language of the Bankruptcy Code compelled the conclusion that the transfer to a creditor for the benefit of an insider guarantor can be avoided and recovered during the extended reach-back period.

*In re C–L Cartage Co.*, 899 F.2d 1490, involved different facts but the same conclusion. There, the Sixth Circuit held that § 550(a)(1), when read together with §§ 547(b)(1) and 547(b)(4)(B), allowed a trustee to recover avoidable payments made during the extended reach-back period from non-insiders when the payments benefitted insiders. In that case, a bank refused to loan money to the debtor company unless it were in the form of a personal loan to the company president co-signed by

**2.** *See, e.g.,* Henk J. Brands, *The Interplay Between Sections 547(b) And 550 Of The Bankruptcy Code,* 89 Colum.L.Rev. 530 (1989); Robert F. Higgins, David E. Peterson, *Is There A One–Year Preference Period For Non–Insiders?;* Marc L. Hamroff and Robert S. Cohen, *One Year Preference Recoveries Can Extend to Lenders and Oth-*

*er Non–Insider Creditors,* 96 Com.L.J. 153 (1991); Brad R. Godshall, Gregory M. Pettigrew, Thomas Musselman, and Bradley Brooke, *Two Years Later: Eight Questions Left Unanswered (or Extremely Confused) by Deprizio,* 19 Cal. Bankr.J. 41 (1991).

the president's mother. The bank then made two personal loans to the president-insider which were co-signed by the insider's mother. Within a year preceding the filing of a bankruptcy petition, the company made a number of payments to the bank. The Sixth Circuit held that since the insider and his mother were creditors of the company, the payments were avoidable preferences pursuant to § 547(b)(1). The court then concluded that a literal reading of § 550(a)(1) permitted recovery from the bank during the extended reach-back period "[w]hen the beneficiary of the transfer is an insider creditor or an insider guarantor." *Id.* at 1494.

The Ninth Circuit has not yet addressed this issue. However, a number of lower courts in this circuit have adopted the *Deprizio* approach. *See, e.g., In re IRFM*, 138 B.R. 595 (Bankr.C.D.Cal.1992); *In re Ishaq*, 129 B.R. 206 (Bankr.D.Or.1991); *In re AEG Acquisition Corp.*, 127 B.R. 34 (Bankr.C.D.Cal.1991).

#### c. *Application*

Appellant argues that the language of sections 547 and 550 is ambiguous, making the plain language approach inappropriate. Appellant further argues that given this ambiguity, the court should look to congressional intent to determine the meaning of the Bankruptcy Code. Appellant also argues that the more specific section, here, section 547, should control the application of the more general section 550, such that the reach-back period should not apply to outsiders who are initial transferees. Appellant additionally contends that Congress is likely to overturn *Deprizio*, and that the Ninth Circuit is unlikely to adopt it. For those reasons, appellant urges reversal of the bankruptcy court's decision.

Appellee argues that *Deprizio* simply adopts the plain meaning of the Bankruptcy Code, and that congressional attempts to overturn *Deprizio* illustrate the correctness of *Deprizio*, showing that Congress may see the need to change the Bankruptcy Code.

This Court finds that while it may be that Congress will change the Bankruptcy Code in order to avoid the result compelled by *Deprizio*, it is for Congress, and not the courts, to change the law. *Mobil Oil Corp. v. Higgenbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), *overruled on other grounds, Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1991). This Court cannot ignore the plain meaning of the Bankruptcy Code on the supposition that Congress may change the law.

This Court finds, as have both circuits which have considered the issue since *Deprizio*, that the language of the Bankruptcy Code is clear and unambiguous, and that *Deprizio, In re Robinson Brothers Drilling*, and *In re C–L Cartage* [3] correctly interpret the plain meaning of the statute. Additionally, the Court finds the Ninth Circuit is likely to follow the Sixth, Seventh, and Tenth Circuits in this interpretation of the Bankruptcy Code.

In applying the *Deprizio* doctrine to the facts of this case, the Court finds that Smith was an insider of DCS. Livingston loaned Smith $75,000. Because Smith loaned $75,000 to DCS, Smith was a creditor of DCS. When DCS repaid the loan of $75,000 to Livingston, the transfer was made on account of the debt owed by DCS to Smith and benefitted Smith by repaying the loan to Livingston and eliminating Smith's personal liability. Thus, the transfer was made for the benefit of an insider under 11 U.S.C. § 547(a)(1) and was made between 90 days and one year before the date of the filing of the petition pursuant to 11 U.S.C. § 547(a)(4)(B). The transfer is therefore an avoidable preference. Because Livingston was the initial transferee of the transfer, under § 550(a)(1), the trustee may recover the value of the transfer from Livingston as occurring within the extended reach-back period.

The Court therefore finds that the bankruptcy court properly read the Bankruptcy Code in keeping with *Deprizio*, and that its

---

**3.** The Court notes that the facts of this case are quite similar to the facts presented in *In re C–L*

*Cariage.* Both cases involve insider-creditors rather than insider-guarantors.

conclusions of law were correct. The bankruptcy court correctly found in this case that the payment to Livingston was an avoidable preference which could be recovered from Livingston.

## IV. *Conclusion*

For the foregoing reasons, the Court AFFIRMS the bankruptcy court's decision in this case.

IT IS SO ORDERED.