**In re Gustavo RODRIGUEZ, Debtor.**

**Harry and Amira THOMPSON;
Horacio and Ofelia Gutierrez,
Plaintiffs/Appellees,**

v.

**Gustavo RODRIGUEZ,
Defendant/Appellant.**

**No. C–96–0151–VRW.**

United States District Court,
N.D. California.

May 15, 1996.

---

**538**

Arlo Hale Smith, San Francisco, CA, for Defendant/Appellant.

Thomas A. Cohen, Thomas A. Cohen Law Offices, San Francisco, CA, for Plaintiffs/Appellees.

## ORDER.

WALKER, District Judge.

In the fall of 1989 appellant, a licensed real estate broker working for Kish & Co., Inc., solicited from appellees loans of $100,000 and $50,000. Appellant solicited these loans on behalf of Bruce Loughridge and Harvey Brickman, who in return delivered to appellees a promissory note for the $150,000 secured by a second deed of trust on property located at 350–358 Linden Street in San Francisco. Loughridge and Brickman never repaid the loans, and the property securing the loans turned out to be worth much less than appellant had represented to appellees. Appellees, unable to collect on their loans, began proceedings against appellant in state court for fraud and breach of fiduciary duty.

On April 7, 1993, the San Francisco Superior Court issued an order granting appellees summary judgment on their breach of fiduciary duty cause of action against appellant. Appellees' other causes of action were set for a January 1994 trial. On November 29, 1993, however, appellant filed a petition for a chapter 11 bankruptcy, staying the Superior Court proceeding. The case was converted to chapter 7 on July 18, 1994, and appellees initiated adversary proceedings to determine the dischargeability of appellant's debts to them. A hearing in these adversary proceedings was held on June 27, 1995.

The bankruptcy court found that appellant intentionally or negligently misrepresented the value and condition of the property and the borrowers in order to induce appellees to make the loan. The bankruptcy court found that appellees had suffered $275,829 in actual losses and that these losses were nondischargeable under 11 U.S.C. § 523(a)(2). Appellant does not challenge this aspect of the bankruptcy court's order.

The bankruptcy court also awarded appellees $75,000 in emotional distress damages and concluded that these damages were nondischargeable under 11 U.S.C. § 523(a)(4). The sole issue raised on the current appeal is whether the bankruptcy court erred in concluding that these emotional distress damages are nondischargeable under § 523(a)(4). For the reasons set forth below, the court AFFIRMS the bankruptcy court's decision.

### I

#### A

The bankruptcy court adversary hearing regarding the dischargeability of appellants' debts was a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). The bankruptcy court was empowered to enter a final judgment on this issue, and the standard of review to be applied in the current appeal is identical to the standard used by circuit courts of appeal reviewing district court decisions: clearly erroneous review of factual findings and de novo review of legal conclusions. *See* F.R.Bankr.P. 8013; *In re*

*Diversified Contract Services Inc.,* 158 B.R. 169, 171 (N.D.Cal.1993).

### B

Title 11 of the United States Code lists eleven exceptions to the general rule that prepetition debts are discharged upon the close of the bankruptcy estate. The bankruptcy court found appellees' emotional distress damages nondischargeable under the exception for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Ninth Circuit has held:

The meaning of "fiduciary" in § 523(a)(4) is an issue of federal law. See *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934); *Runnion v. Pedrazzini (In re Pedrazzini),* 644 F.2d 756, 758 (9th Cir.1981). The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context. See *Angelle v. Reed (In re Angelle),* 610 F.2d 1335, 1338–39 (5th Cir.1980). The trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a "trustee" before the wrong and without reference to it. *Davis,* 293 U.S. at 333, 55 S.Ct. at 153–54; *Pedrazzini,* 644 F.2d at 758. These requirements eliminate constructive, resulting or implied trusts. *Pedrazzini,* 644 F.2d at 759.

Although the concept of fiduciary is to be narrowly defined as a matter of federal law, state law is to be consulted when a trust in this strict sense exists. *Id.* at 758.

*Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir.1986). *Ragsdale* involved the dischargeability of a judgment against one partner in favor of another. The judgment creditor argued that the judgment was nondischargeable under § 523(a)(4) because his partner was a "fiduciary" within the meaning of that section by virtue of Cal.Corp.Code § 15021, which provides "every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the part-

nership or from any use by him of its property." *Id.* at 796. The Ninth Circuit agreed with the judgment creditor and ruled the judgment to be a nondischargeable debt after concluding that "[i]n California, partners are trustees for each other" and that "this is more than just a fiduciary relationship created in response to some wrongdoing; California has made all partners trustees over the assets of the partnership. Accordingly, we hold that California partners are fiduciaries within the meaning of § 523(a)(4) and that [the debt] is nondischargeable." *Id.* at 796–97.

*Ragsdale* thus looked to a specific provision of California law which creates an "express" or "technical" trust relationship between partners to determine that partners act as "fiduciaries" for one another within the meaning of § 523(a)(4). The Ninth Circuit Bankruptcy Appellate Panel has similarly held that Cal.Bus. & Prof.Code § 10131 creates a fiduciary relationship between a real estate broker and his clients which makes a judgment of fraud or defalcation nondischargeable. Thus, in *In re Woosley,* 117 B.R. 524, 529 (9th Cir. BAP1990), the Panel held:

[The debtor's] real estate license carries with it fiduciary obligations to his principals under California law when carrying out licensed activities. With respect to licensed activities, real estate licensees have the same obligations as trustees under California law, including duties to refrain from making misrepresentations or obtaining any advantage over their principals, and to make the fullest disclosure of all material facts concerning the transaction that might affect their principal's decision. *Smith v. Zak,* 20 Cal.App.3d 785, 792, 98 Cal.Rptr. 242, 246–47 (1971); *Batson v. Strehlow,* 68 Cal.2d 662, 675, 68 Cal.Rptr. 589, 598–99, 441 P.2d 101, 110–11 (1968).

Licensed activities include: "solicit[ing] borrowers or lenders for or negotiat[ing] loans or collect[ing] payments or perform[ing] services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property * * *." Cal.Bus. & Prof.

Code § 10131(d). The fiduciary obligations accompanying these licensed activities are sufficient to establish a "fiduciary capacity" within the meaning of § 523(a)(4). *Lewis v. Short (In re Short),* 818 F.2d 693, 695 (9th Cir.1987); see *Ragsdale v. Haller,* 780 F.2d at 796–97. The trust giving rise to the fiduciary relationship arose before any wrongdoing, not as a result of it. See 780 F.2d at 796. As with partnership fiduciary duties, the fiduciary obligations of a real estate licensee do not arise merely from the beneficiary's "confidence, trust and good faith" with respect to the trustee; they are imposed explicitly by state law.

See also *In re Hooper,* 112 B.R. 1009, 1013 (9th Cir. BAP 1990); *In re Grabau,* 151 B.R. 235, 240 (Bkrtcy. N.D.Cal.1991). Thus, under *Woosley* a finding that the debtor was acting within the scope of his real estate license is sufficient to bring any resulting judgments for fraud or defalcation under § 523(a)(4).

In *In re Evans,* 161 B.R. 474 (9th Cir. BAP 1993), the Panel appeared to add a second requirement to the fiduciary duty inquiry in the context of real estate brokers. There the Panel refused to hold that a finding in a state court proceeding that a broker had breached his fiduciary duty was collateral estoppel on the existence of a fiduciary duty for § 523(a)(4) purposes. *Id.* at 478. Rather, the Panel appeared to hold that a fiduciary relationship for the purpose of § 523(a)(4) must always be defined as "a fiduciary relationship *with respect to property,* subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person. * * * Thus a requirement of a trust relationship is a trust res—money or property that is entrusted to the debtor-fiduciary." *Id.* (emphasis in original; internal citation omitted). Because the state court finding of a fiduciary duty had not specifically identified such a res, but rather had rested on the "general fiduciary obligations" which a real estate broker owes to his clients, the *Evans* Panel concluded that the state court decision did not establish that the debtor was a fiduciary within the meaning of § 523(a)(4). *Id.* at 478–79.

The *Evans* Panel specifically noted that it was not overruling *Woosley.* Rather, *Evans* held that *Woosley*

> is not to the contrary. In that case, the dispute concerned an identifiable sum of money invested with the debtor-broker and the debtor's malfeasance in failing to take steps to protect the creditor's investment. Although the Panel did not analyze the debtor-broker's status as a fiduciary in terms involving a trust res, the facts reveal that the funds placed with the debtor and the investment constituted a trust res sufficient to support fiduciary capacity under § 523(a)(4).

*Id.* at 478. Thus, although *Evans* requires the identification of a trust "res" as a prerequisite to finding a fiduciary under § 523(a)(4), in the context of real estate brokers acting within the scope of Cal.Bus. & Prof.Code § 10131 that "res" exists whenever the dispute concerns "an identifiable sum of money."

## II

Appellant argues that *Evans* and *Woosley* do not apply in this case because appellant was not acting under his real estate license at the time he took the funds from appellees, but rather was acting merely as a "conduit" for delivering appellees' funds to Kish & Co., who plaintiff claims was the real broker in the transaction. Appellant claims that this case is "virtually on all fours" with *In re Grabau,* 151 B.R. 227 (N.D.Cal.1993).

*Grabau* involved real property sales by Allstate Investment Company gone bad. In December 1981 Allstate decided to raise some quick cash. *Grabau,* 151 B.R. at 230. It therefore decided to sell fractional interests in certain real property it owned. *Id.* Its president, Lee Danna, prepared a sales package which indicated that Allstate owned the properties offered for sale, that the properties were suitable for rental and that the investors would receive a fractional interest in the actual title to the properties along with a substantial return on their investments. *Id.* In fact, Allstate never held title to the properties, the properties were not suitable for rental and plaintiffs never received a

profit on their investments. *Id.* at 231. Once the plaintiffs became aware of these facts concerning their investments, Allstate filed for bankruptcy. *Id.*

The *Grabau* court addressed whether claims against two Allstate employees, Vincent Brown and H. Beck Grabau, were dischargeable under § 523(a)(4). Brown was a licensed real estate broker and was Allstate's broker of record until September 1982; there was no evidence, however, that Brown ever made misrepresentations about the investments or that he had any personal involvement in developing or selling the investment package. *Id.* Grabau, in contrast, had sold investment packages to seven of the plaintiffs, but claimed that he had no knowledge of the fraudulent nature of the packages and that he had reasonably relied on the representations of Danna and of Allstate's in house counsel that the packages were legitimate investments. *Id.* at 230.

The bankruptcy court held that plaintiffs' claim against Brown was nondischargeable and that their claim against Grabau was dischargeable. Regarding Brown, the bankruptcy court reasoned that since Brown had been Allstate's broker of record when the sales were made, he was a fiduciary of plaintiffs within the meaning of § 523(a)(4). *Id.* at 231. Conversely, the bankruptcy court concluded that since Grabau merely acted as a "conduit" for delivery of plaintiffs' funds to those officials at Allstate responsible for putting them in a trust account, he had not acted within the scope of his real estate license and thus was not a fiduciary of plaintiffs under § 523(a)(4). *Id.* at 234.

The district court reversed as to Brown and affirmed as to Grabau. The court concluded that "the mere fact that an individual is a licensed real estate broker does not automatically create a fiduciary relationship with every client. * * * the existence of a fiduciary relationship for purposes of § 523(a)(4) requires that the debt arise from defendant's personal acts or omissions relating to his real estate license." *Id.* at 232–33. Because Brown had taken a six-week leave of absence during the time when plaintiffs purchased the investments, the court held that there was no such evidence of personal in-volvement and, thus, that Brown was not a fiduciary under § 523(a)(4). *Id.* at 233. Similarly, because Grabau was not acting within the scope of his license at the time he made his sales, but rather was merely acting as a salesman on Allstate's license (held at the time of the sales by Brown), the court upheld the bankruptcy court's determination that Grabau was not a fiduciary under § 523(a)(4). *Id.* at 234.

*Grabau* provides no support for appellant's position in this case. To the extent that appellant argues that he is not a fiduciary under § 523(a)(4) merely because Kish & Co. was the broker of record, that argument is undercut by the holding in *Grabau*. *Grabau* held that the key inquiry in these cases is not who the broker of record was, but rather whether the judgment arose out of actions or omissions taken by debtor-broker relating to his real estate license. *Grabau*, 151 B.R. at 231–32. Thus, the mere fact that Kish & Co. was the broker of record is not determinative of appellant's status as a fiduciary of plaintiffs.

Moreover, appellant has not challenged the bankruptcy court's factual determination that appellant played an active role in the underlying transactions. After receiving evidence and hearing the testimony of both appellant and appellees, the bankruptcy court made the following findings:

> I find that Mr. Rodriguez misrepresented material facts with respect to the transaction, with the intent to induce the plaintiffs to loan the funds that they did loan, or failed to reveal material facts where he had a duty to do so.

> For example, he misrepresented that the property was in good condition; that tenants were paying three to four thousand dollars a month in rent; that it would be a three-month loan; that the borrowers were millionaires and well able to repay the loans; that the property had been inspected by a * * * co-lender who was a contractor; and failed to disclose that the loan would be junior to another loan; and that the property was in a bad neighborhood.

> At the time Mr. Rodriguez made these misrepresentations or failed to disclose

these material facts, he knew that the representations were false or that—or acted with reckless disregard. * * *

[As to non-dischargeability under § 523(a)(4) ] I do believe there's a trust res, and the trust res are the funds loaned by the Plaintiffs to * * * the borrowers.

The fact that * * * Mr. Rodriguez was not the borrower and that the transaction went through an escrow and a title company, I do not think immunizes him from liability * * *

Record Transcript at 193–196. This finding that appellant was actively involved in the underlying misrepresentations distinguishes the instant case from *Grabau.*

The bankruptcy court did not err when it concluded that appellant was acting within the scope of his licensed activities when he made the above misrepresentations. The licensed activities of a real estate broker include: "solicit[ing] borrowers or lenders for or negotiat[ing] loans or collect[ing] payments or perform[ing] services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property." Cal.Bus. & Prof.Code § 10131(d); *Woosley,* 117 B.R. at 529. The above misrepresentations, which were made by appellant while he was soliciting loans from appellees and which involved misstatements about the value of the real property securing those loans, clearly fall within the scope of § 10131(d). See *Woosley,* 117 B.R. at 529–30 (licensed broker acts within scope of licensed duties and as fiduciary of lender even when he negotiates a loan on his own behalf).

The bankruptcy court properly found that appellant was acting within the scope of his real estate license when he made the instant misrepresentations. Under the above cases, this made appellant appellees' fiduciary in the underlying transactions. Moreover, the bankruptcy court properly found that the loan principal given by appellees to appellant constituted a trust res under *In re Evans.* It follows that an express trust existed between appellants and appellees. The bankruptcy court did not err in concluding that appellees' claims for emotional distress damages against appellant were nondischarge-

able under § 523(a)(4), and its decision is AFFIRMED.

IT IS SO ORDERED.